PEOPLE OF PORTO RICO, Plaintiff and Appellee, *v.* RAMÓN LAMBOY-TOLEDO, Defendant and Appellant.

No. 3386.   Argued December 20, 1927, and May 1, 1928.—Decided May 28, 1928.

*E. Martinez Aviles* for the appellant.   *José E. Figueras* for the appellee.

MR. JUSTICE ALDREY delivered the opinion of the court.

Ramón Lamboy was charged with attempted arson in that on the night of January 18, 1927, wilfully, unlawfully, maliciously and with the intent to destroy it, he attempted to set fire to a house of Felipe B. Rivera on Carmen street of Hatillo in which Ismael Sepulveda and his family were living at the time. This crime is defined by section 50 of

the Penal Code in connection with sections 398 and 405 of that Code referring to the crime of .arson. In the first of those three sections it is said that every person who attempts to commit any crime or is prevented or intercepted in the perpetration thereof shall be punished as therein provided.

The defendant asked to be tried by jury, but renounced that right later and asked to be tried by the court, which after trial convicted him of the crime charged and sentenced him to two years in the penitentiary.

The first error assigned by the defendant on appeal from that judgment is that the court erred in allowing the prosecution to present at the trial the testimony of the defendant before a justice of the peace without having previously proved the *corpus delicti*.

It appears from the evidence for the prosecution presented at the trial that on January 17, 1927, the defendant was in Hatillo where at his request he was shown the house there belonging to Felipe B. Rivera; that on the following day at about 10:30 p. m. he passed near a railroad watchman close to the town of Hatillo who was standing guard over the railroad track and whose suspicions were aroused because the passer was a stranger and because, instead of entering the town by the road running through it, he followed the railroad track carrying a bundle and disappeared in a culvert, for which reasons the watchman informed the police; that the defendant went under a house inhabitated by Lucrecia Machado which fronts on the road through the town next to another on the corner of Carmen street; that across the road on the other corner of Carmen street there is a house which had been a theater and was then a school-house and next to which is the house of Felipe B. Rivera fronting on Carmen street; that from the yard of the house of Lucrecia Machado to the house of Felipe B. Rivera occupied by Ismael Sepulveda is a matter of seconds only, as testified by the collector of internal revenue; that the defendant came out from under the house of Lucrecia Machado and started

to cross the road, but turned back on seeing that somebody was watching him; that again he went as far as the schoolhouse, but returned and went under the house of Machado; that when several people called by the police went to arrest him at about 1 a. m. under the aforesaid house the defendant ran out towards a wire fence around the yard of the house where he was apprehended; that underneath the house where he had been was found the bundle which he was carrying containing a can of gasolene, two boxes of matches, a piece of bread and a bottle of rum.

Following that evidence the district attorney presented the testimony given by the defendant before the justice of the peace of Hatillo on the morning of the day of his arrest in which he said that he arrived at Hatillo the previous night at about twelve o'clock from the ward of Angeles of Utuado after crossing several roads and went to look for a sack containing a gallon of gasolene which he had hidden on the side of the road to Arecibo among some plants on the day before; that he went there with the intention of setting fire to a house of Felipe B. Rivera on Carmen street, Hatillo, sent by Felipe B. Rivera who promised to pay him fifty dollars after he had committed that act and gave him one dollar in advance with which to buy gasolene and any other thing that might be necessary; that he did not perform the act because of fear and because he had been surprised by a policeman and other people under a house from which he had run and was caught by them who took from him a can of gasolene, two boxes of matches, a penknife and a bottle of rum.

In Wigmore on Evidence, second edition, vol. 4, p. 405 *et seq.* is given the history of the rule requiring proof of the *corpus delicti* independently of the statements and confessions of the defendant made before the trial with reference to the crime charged. This court held in the murder cases of *People* v. *Rosado,* 17 P.R.R. 417, and *People* v. *Matos et al.,* 26 P.R.R. 520, that the confession of the accused made before trial can not be admitted as evidence against him

if the *corpus delicti* has not been established by evidence of another character, saying also in the latter case that the elements of the *corpus delicti* are the proof of the death of a human being at the hands of another, and that it is erroneous to think that the guilt of the accused forms a part of the *corpus delicti.* The following cases contain opinions in the same sense: *People* v. *Simonsen,* 107 Cal. 345, 40 Pac. 440; *People* v. *Ward,* 145 Cal. 736, 79 Pac. 448, and *Pierson* v. *State of Alabama,* 79 So. 447, citing that of *Ryan* v. *State,* 100 Alabama 94, 14 So. 868.

That rule has been stated in the cases cited because they involved consummated crimes where the *corpus delicti* must necessarily exist, whether in case of a person violently killed, a house wilfully burned or the property of another stolen; but it can not be applied where there is only an attempt to commit a crime, for then there is no death, or burning or theft. As in this case the information charges an attempt to burn a house, no proof could be adduced of a *corpus delicti* which did not exist. However, the American courts hold that the confession of the accused made extrajudicially, that is, beyond the authority of the court, requires some corroboration, which in the instant case is contained in the government's evidence, for it appears therefrom that the accused was in Hatillo on the day preceding the night when he was arrested looking for the house of Felipe B. Rivera and that there was found on him a can of gasolene which he carried hidden in a sack and could be used to start a fire. Therefore, under those circumstances the government's evidence was admissible as to the confession made by the defendant. Moreover, as will be seen later, the defendant asked to be allowed to testify at the trial and confessed his guilt.

The second ground of the appeal is that the court committed error in weighing the evidence. We have rehearsed the evidence submitted by the prosecution. After that was heard the defendant asked to be allowed to testify and said at the trial that he lived in the ward of Angeles of Utuado;

that he did not know the town of Hatillo where he had been only on the night of January 17-18 when the events took place; that the policeman of Utuado, Felipe B. Rivera, had been telling him for a year that he owned a house in Hatillo which was empty, which produced no rent and which he could not sell; that his insurance would expire on the 19th of January at 4 p. m. and that he wanted the defendant to do some work on it; that on the 16th of January the policeman saw him again and insisted on his going to Hatillo; that on Monday the 17th during the day he went to that town to have the house shown to him under the pretense that he had to do some carpentry work on it; that on the night of the 18th he returned to Hatillo, Rivera having told him to wait for him about 10 or 11 p. m., but seeing that he did not come he thought of leaving; that he was going from the house where he was to the road in the hope of a car passing that might take him to his home. Examined by the prosecution he testified that Felipe B. Rivera gave him one dollar with which to buy gasolene and that he remembered having told the district attorney that Rivera promised him fifty dollars for setting fire to his house; that he went to Hatillo for that purpose; that he bought the gasolene and the matches for burning the house. The other witness for the defense was Balbina Torres who, it seems, was living with the defendant, for she said that on January 16 Felipe B. Rivera went to her house and asked Lamboy what he had decided about the matter of which he had told him and on his answering that he had not decided anything, told him to go to the police station to settle the matter, and compelled him to go by telling him that should that day pass another thing might happen to him; that Lamboy went to the police station and returned in the afternoon. Cross-examined by the prosecution, Lamboy testified that he went to Hatillo to do some work and heard that it was about setting fire to a house of Felipe B. Rivera that was insured so that he might collect the insurance money.

212

The government's evidence and the testimony of the defendant at the trial are sufficient to sustain the judgment of conviction, for although the mere intent to commit a crime is not punishable without the performance of some act tending to carry out the criminal intent; although this is not fully consummated because of acts independent of the will of the agent; although the act of assembling the elements required for committing the crime is considered merely as a preparatory act and needs some act of commission in order to render the attempt punishable, and although the voluntary and free abandonment of a criminal intent excludes the punishment, yet the instant case can not be included among these situations because after the preparatory acts of the defendant, such as having been on the previous day in the town of Hatillo in order to locate the house which he intended to burn and of having bought gasolene and matches, he performed acts tending to the commission of the crime of burning the said house, for he returned to the town of Hatillo late at night carrying with him gasolene and matches, concealed himself under a house so near to that of Felipe B. Rivera that he could cover the distance between them in a few seconds, and above all making several attempts to reach the house which he was to burn and succeeding in reaching the house next to it, but did not set fire to the house because he saw that he was being watched and because he was arrested. It is true that the defendant testified that he abandoned his purpose through fear and because Felipe B. Rivera whom he was expecting did not arrive, and that he went out to the road hoping to find a car that would take him to his home; but his conviction by the court shows that it did not believe that statement and the court was right because apart from the fact that it seems very doubtful that cars would be passing there at that hour going towards the home of the defendant, if that was his purpose it was most natural that he would have waited on the road and not have hidden under a house. But independently of all this, for the existence of

abandonment of the intention acts showing it are required. In Wharton's Criminal Law, vol. 1, p. 215, treating of the theory that a person who voluntarily and freely desists from his criminal intention should not be punished, it is said:

"It is to be noticed, however, that as the *attempt* is only provable by some overt act, so the *abandonment* of the attempt cannot be proved by mere conjectural tests or by declarations of mental change. As declaring an intention to do a thing is not an indictable attempt, so declaring an intention to give up an attempt is not an abandonment of the attempt. If it were otherwise, criminal attempts, especially political, would cease to be indictable, for there are few cases in which such criminal attempts, when in process of execution, are not disavowed. There must be substantive acts showing that the abandonment was real, just as there must be substantive acts showing the attempt was real.

"It should be remembered, also, that if such abandonment is caused by fear of detection it is no defence, if the attempt progress sufficiently toward execution to be *per se* indictable before such abandonment. Thus if a thief, when moving his hand toward a pocket, desists on seeing a detective, the offense is made out."

The third error assigned is the refusal of a new trial to the defendant on newly discovered evidence consisting in the fact that after the trial and before judgment Felipe B. Rivera was convicted of having urged the defendant to set fire to his house, but the fact that a person who has advised another to commit a crime has been convicted does not exonerate the other from guilt for his participation in the crime even as an attempt.

The fourth and last assignment is that the penalty is excessive, but as the appellant failed to argue that assignment in order to show the reasons why the sentence was excessive in this particular case, we shall not consider that assignment.

The judgment appealed from must be affirmed.

Mr. Justice Hutchison concurred in the judgment.